## No. 37,039

In the Matter of the Estate of Ernest T. Rogers, Deceased (Luna B. Rogers, Executrix of the Estate of Ernest T. Rogers, Deceased, *Appellant*, v. Harve S. Edwards, Administrator of the Estate of Herbert S. Edwards, Deceased, *Appellee*).

(190 P. 2d 857)

*W. S. Norris,* of Salina, argued the cause, and *G. A. Spencer,* of Salina, and *Robert E. Ferguson,* of Marysville, were with him on the briefs for the appellant.

*Walter T. Griffin,* of Marysville, argued the cause, and *L. L. McLaughlin,* of Marysville, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a proceeding in the probate court of Marshall county by the administrator of a decedent's estate in that county for the appointment of an administrator for the estate of a nonresident decedent. The petitioner prevailed in both the probate and district courts and the executrix of the estate of the nonresident, appointed in North Carolina, has appealed to this court. The primary question is whether an administrator was properly appointed.

The action in the district court was tried on stipulated facts which, in substance, and insofar as material, are: Ernest T. Rogers during his lifetime was at all times domiciled in Durham county, North Carolina, and had never been a resident of Kansas; he had never been within the confines of Marshall county; he was temporarily absent from North Carolina as a member of the United States army; in the latter capacity he was temporarily stationed at the Smoky Hill army air field in Saline county, Kansas; Herbert S. Edwards was a resident of Marshall county, Kansas; he died as a result of injuries sustained in a motor vehicle collision on U. S. highway 81 in Saline county on November 30, 1944; three vehicles were involved in the collision, one driven by Rogers, the other by Edwards and a third by an employee of certain residents of Nebraska; Edwards died six days after the collision; Rogers, while a resident of and domiciled in Durham county, North Carolina, was killed in the Pacific war theater on October 27, 1945; in April, 1946, Rogers' will was duly probated and Luna B. Rogers was appointed

executrix of his estate by the superior court of Durham county, North Carolina; on the date of the collision Rogers had a written contract of indemnity insurance with the American Indemnity Company which covered liability for personal injuries and damage to property resulting to others from the operation of the automobile he operated; on the date of the accident the policy was in full force and effect but was later canceled by the insurer with Rogers' acquiescence as of March 13, 1945; the policy was one of ordinary automobile indemnity form and provided:·

"6. Action against Company—Coverages A and B. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company."

Other stipulated facts, in substance, are: There has been no determination of any obligation or liability of Rogers, or of his estate, for injuries sustained in the automobile collision; the insurer is a Texas company duly organized and admitted to transact insurance business in Kansas; the commissioner of insurance of the state of Kansas is the designated process agent of the insurer; Rogers at no time had any tangible assets or estate of any kind or character in Kansas unless the indemnity policy could be said to be within this state and to constitute an asset of the estate; Rogers had never been liable in Kansas for any debts, liabilities or obligations unless the claim against Rogers' estate for the wrongful death of Edwards constitutes a claim and makes the Edwards' estate a creditor of Rogers' estate; no one other than the petitioner has applied for administration of Rogers' estate in Kansas; all of Rogers' heirs are nonresidents of Kansas; the probate court of Marshall county appointed R. O. Crouse as administrator c. t. a. of the Kansas estate of Rogers, deceased.

Was an administrator for the nonresident decedent's estate properly appointed? The pertinent portion of G. S. 1947 Supp. 59-2203 provides:

"Proceedings for the probate of a will or for administration shall be had in the county of the residence of the decedent at the time of his death; if the decedent was not a resident of this state, proceedings may be had in any county *wherein he left any estate to be adminstered.*" (Our italics.)

The precise question presented is whether this indemnity policy, under the stipulated facts, constitutes "estate" which the insured

left in Kansas to be administered. It is not contended the policy itself was on deposit anywhere in this state at the time of the insured's death or at any other time.

The answer depends upon whether (1) the indemnity policy, prior to the establishment of the insured's liability for damages, by judgment or agreement, constitutes an asset of the insured's estate; and (2) if it does, is the situs of that asset in Kansas after the death of the insured or does its situs, upon his death, become fixed in the state of his domicile? Manifestly, if its situs is not in Kansas the insured left no "estate" in any county in Kansas to be administered. Appellant asserts both questions must be answered adversely to the appellee. She contends the second question, if not both, has been definitely settled by our own decisions. Appellee contends the policy is an asset and that its situs should be declared to be in Kansas for the purpose of having an administrator of the nonresident's estate appointed here. His object, of course, is to bring an action for damages in this state instead of suing the executrix of Rogers' estate in North Carolina. To do this he would be required to obtain valid service on a proper person in this state and therefore sought the appointment of an administrator. In support of his contentions appellee leans heavily on decisions from other jurisdictions.

Touching the first question appellant contends that in order to justify the appointment of an administrator in this state the estate left here by the nonresident for administration must be something of a tangible nature, citing *Perry, Adm'r, v. St. J. & W. Rld. Co.,* 29 Kan. 420, 423. The nonresident had no assets in this state and we held a recovery, if any, in a wrongful death case would not inure to his estate but only to the benefit of his widow and children or next of kin and, therefore, such cause of action did not constitute estate and the appointment of an administrator for such estate was invalid. No insurance policy was involved.

Appellant, however, further asserts the policy, under the admitted facts, cannot constitute a present asset of the insured's estate anywhere. In support she cites our decisions holding an insurer, under the terms of this policy, is merely an indemnitor and as such can only be subjected to judgment on the policy after liability of the insured for damages has been finally determined. We have so held. A few of the cases are *Schoonover v. Clark,* 155 Kan. 835, 837, 130 P. 2d 619; *Lang v. Underwriters at Lloyd's,* 157 Kan. 314, 319, 139

P. 2d 414; *Lechleitner v. Cummings,* 160 Kan. 453, 458, 163 P. 2d 423, and cases therein cited. In other words, appellant states that prior to the occurrence of the condition precedent specified in the policy, the insured, if living, would have no cause of action against the insurer and *a fortiori* the policy does not now constitute an asset of the insured's estate left in Kansas to be administered.

Assuming for the moment the administrator was properly appointed and assuming further that the situs of the policy was in Kansas, this question persistently intrudes—what estate did the policy contain or create for the administrator to administer in Kansas? At this time and at any time prior to judgment against the insured such administrator could not draw to the estate any asset provided by the policy. Assuming the administrator of the Edwards' estate instituted an action against the administrator of Rogers' estate for the purpose of recovering damages resulting from the automobile collision, garnishment proceedings against the insurer would not lie prior to rendition of judgment or agreement of liability. Furthermore if a judgment was rendered and an appeal was taken therefrom garnishment proceedings against the insurer would not lie until affirmance of such judgment on appeal. (*Lechleitner v. Cummings,* supra, p. 458, 460.) So in the Lechleitner case involving an identical indemnity policy we quoted from the case of *Lewis v. Barnett,* 139 Kan. 821, 33 P. 2d 331, 93 A. L. R. 1082, in which we held:.

"A claim for damages in tort for the negligence of another does not become a debt under the garnishment statute of this state until it is merged into a judgment.

. "A claim for damages in tort for the negligence of another is not a contingent liability, as included and mentioned in the garnishment statute of this state." (Syl. ¶¶ 1, 2.)

In other words the rights of the plaintiff in such an action could not be superior to the rights of the insured. The plaintiff could not draw into the estate of the deceased insured assets which the insured did not yet possess. (*Lechleitner v. Cummings,* supra.)

In *American Surety Co. v. Sutherland,* 35 F. Supp. 353, it was held such a policy, while not technically an "asset," did constitute an "actual asset" if the parties having a claim for damages resulting from personal injuries obtained a valid judgment.

On the other hand appellee argues: An indemnity policy such as the instant one does have some value; it possesses contingent value;

that value is the protection it afforded the insured, and now affords his estate, in the event the contingent liability is later established; it has been held such a policy constitutes an asset of an estate of a nonresident for the purpose of obtaining the appointment of an administrator. (*Robinson v. Carroll,* 87 N. H. 114, 174 A. 772, 94 A. L. R. 1437 [1934]; *Gordon v. Shea,* 300 Mass. 95, 14 N. E. 2d 105 [1938]; *Furst v. Brady,* 375 Ill. 425, 31 N. E. 2d 606, 133 A. L. R. 558 [1940]; *In re Vilas' Estate,* 166 Or. 115, 110 P. 2d 940 [1941].) See, also, 33 C. J. S., Executors and Administrators, § 20 b; 21 Am. Jur., Executors and Administrators, §§ 40, 41.

The foregoing constitute the contentions of the parties on the first question, namely, whether the policy constitutes "estate." The question is not free from difficulty. It may well become highly important under varying circumstances. Its determination, however, is not necessary to a decision in the instant case and we prefer to decide the case on the second question presented, namely, whether the situs of the policy, the alleged asset, is in Kansas or in the domicile of the decedent.

In determining that issue we are not unmindful of the previously cited cases from foreign jurisdictions relied on by appellee. They are entitled to and have received our careful consideration. The New Hampshire case, on which the others primarily are based, discloses a statute in that state which permits the appointment of an administrator of a nonresident decedent's estate not only if such decedent has "estate" in New Hampshire but also if the personal representative or kin of such person has a cause of action in any county of the state. The opinion also stresses the fact that while the domicile of the insured was in a foreign state the insured was a temporary resident of and died in New Hampshire. Probably more important, however, than these considerations was the fact that neither the New Hampshire case nor any of the other cases cited by appellee adheres to the doctrine of situs which obtains in this state. Some of the states have statutes on that subject.

This court has long recognized the irreconcilable conflict which exists on the subject of situs of personal property for the purpose of administration. (*Toner v. Conqueror Trust Co.,* 131 Kan. 651, 660-664, 293 Pac. 745.) This court early made its choice of doctrine on that subject and has consistently adhered to it. As applied to administration of estates we are committed to the doctrine that the situs of personal property is transitory prior to the death of its

owner and follows the owner wherever he may be but that after his death the situs becomes fixed and local at the place of his domicile. (*Moore, Adm'x, v. Jordan,* 36 Kan. 271, 275, 13 Pac. 337; *Modern Woodmen v. Hester,* 66 Kan. 129, 71 Pac. 279; *In re Miller's Estate,* 90 Kan. 819, 822, 136 Pac. 255; *Ames v. Bank,* 105 Kan. 83, 86, 181 Pac. 564; *Jasper v. Thomas,* 124 Kan. 163, 165, 257 Pac. 714; *Toner v. Conqueror Trust Co.,* supra, p. 660-665, and cases therein cited.) The same principle was recently applied to administration of estates of our own residents. (*In re Estate of Summerfield,* 158 Kan. 380, 383, 147 P. 2d 759.)

In the cited cases that doctrine was applied to notes, to notes and mortgages on real estate in Kansas, to certificates of corporate stock in a corporation organized under our laws and having its principal place of business here, to beneficiary certificates and to certificates of bank deposits. Some of the decisions turned on the question of situs and others on the question of situs and whether the domiciliary administrator or a local administrator had superior title to the asset.

In the Moore case, *supra,* this court said:

"The principal administration to which all others are subordinate is at the domicile of the intestate, and the universally recognized rule of law is that the succession to and distribution of personal estate is governed by the law of the place where the intestate was domiciled at the time of his death.

" 'The original administrator, therefore, with letters taken out at the place of the domicile, is invested with the title to all the personal property of the deceased, for the purpose of collecting the effects of the estate, paying the debts, and making distribution of the residue according to the law of the place or directions of the will, as the case may be.' (*Wilkins v. Ellett,* 9 Wall. 740; Story on Conflict of Laws, § 379.)" (p. 274.)

In the Modern Woodmen case, *supra,* this court stated:

"The fact that the beneficiary certificate sued on was in Douglas county was not of itself sufficient to empower the probate court to appoint a guardian for the infants there. The instrument created a simple contract debt. The substantial property right adhered to the debt rather than to the instrument evidencing it, and in legal estimation its *situs* followed the domicile of the owner. In *Moore, Adm'x v. Jordan,* 36 Kan. 271, 13 Pac. 337, 59 Am. Rep. 550, it was held that a note and mortgage belonging to a man dying in Colorado with the instruments in his possession there were not assets in the hands of his widow as administratrix appointed in Colorado, but belonged to an administrator appointed at the decedent's domicile in Illinois, and the doctrine was illustrated by numerous decisions cited in the opinion. Upon the same principle, if the beneficiary certificate had its *situs* at the domicile of the owners in Missouri, it could not have been assets in the hands of a guardian appointed in Kansas, and hence could not have been the foundation of any order appointing such guardian." (p. 137.)

In the Miller case, *supra,* we find the following:

"Was it the duty of the probate court to appoint an administrator on the application of a creditor of the decedent? Miller was a nonresident of Kansas, and the question is, Did he leave anything here on which to found administration? It has been held that:

'Where a person dies intestate, who was not a resident or inhabitant of the state at the time of his death, and who left no estate within the state to be administered, a probate court of the state has no jurisdiction to issue letters of administration on the estate of such intestate; and where letters are issued, the acts of the court in doing so are utterly null and void.' (Citations.)

"There was no property in Kansas on which to found administration unless Miller's ownership of shares of stock in a Kansas corporation furnished a basis. Under the common law and as a general rule the situs of personal property is the residence of the owner and the title to personalty is in the domiciliary executor or administrator. This rule may be modified by statute, and it frequently is for taxation and some other purposes. If the general rule applies that the situs of personal property follows the domicile of the owner and there is nothing in the character of the property to except it from the operation of this rule, then it would seem that the probate court was without jurisdiction to make the appointment." (p. 821.)

In the Toner case, *supra,* the administrator of the deceased nonresident, domiciled in Missouri, held a note secured by a mortgage on Kansas land. The note and mortgage were executed and delivered by a citizen of Kansas to the deceased during his lifetime. The maker contended he had a claim against the estate of the deceased. The domiciliary administrator contended, in part, the alleged creditor had not procured administration in Kansas and his claim was barred by the Kansas nonclaim statute. Upon a lengthy review of the authorities we held the claim of the Kansas creditor was not barred for the reason that no administration could have been had in Kansas on the debt evidenced by the note and mortgage. (p. 665.)

If the rights of the insured against the insurer, under an ordinary indemnity policy, constitute assets of the nonresident insured's estate, prior to the establishment of liability of such estate to third persons, the situs of such assets is at the domicile of the nonresident. The mere fact a foreign insurance company which issued the policy is also authorized to transact business in Kansas does not change the situs of such asset, if it be an asset prior to the establishment of the insured's liability, from the. domicile of the nonresident to the state of Kansas.

Of course, every state is, and should be, anxious to protect and convenience its own citizens so far as possible. No state is under duty to permit assets of debtors to be placed beyond the reach of

its own creditors where it can legally retain such assets. But in order to retain them they must first exist here. To hold the policy in question has its situs in Kansas for purposes of administration would be contrary to the principle repeatedly enunciated in our prior decisions. In view of our firmly established and well understood doctrine, which we regard as sound, we do not desire to confuse it. A conclusion that this indemnity policy constitutes "estate" left by the nonresident decedent to be administered in Marshall county would mean this policy constitutes "estate" which may be administered in any county in Kansas and in any county of every other state of the union, with a similar statute, in which the insurer is authorized to transact business. We do not think the statute was intended to produce such a result.

We have diligently explored the possibility of making an exception in cases of this character on the ground of public policy. One of the grounds for the appointment of the administrator in the Oregon case, *supra*, was public policy. This state, as Oregon, has a statute which authorizes actions to recover damages to persons or property caused by the negligence of nonresidents in the operation of motor vehicles on our highways and which provides for substituted or constructive service. (G. S. 1935, 8-401, 8-402.) That statute has been construed in a case this day decided, *Kelley v. Koetting*, No. 37,062, 164 Kan. 542, 190 P. 2d 361. An examination of the statute discloses the legislature did not see fit to provide for such actions against, and for service on, executors or administrators of estates of deceased nonresident operators of vehicles. The statute cannot be enlarged by courts to embrace them. (See annotation 155 A. L. R. 345.) The cause of action, of course, does not abate but under the statute there is no provision for substituted or constructive service in this state on executors or administrators of estates of deceased nonresident tort-feasors. In view of the fact the legislature saw fit not to include executors and administrators in the statute we think this court would not be justified in holding valid the appointment of an administrator of such estate on the ground of public policy. The legislature has spoken. It has required that the nonresident shall have left "estate" in some county in Kansas to be administered before an administrator can be appointed.

The judgment is reversed with directions to set aside the order appointing the administrator.

HARVEY, C. J., dissents.