In the Matter of the Estate of ROBERT A. RIGGLE, Deceased. MABEL RIGGLE, Appellant; MABEL K. WELLS, Respondent.

Second Department, June 13, 1960.

*William F. Laffan, Jr., Alexander Orr, Jr.,* and *Edward J. Pacelli* for appellant appearing specially.

*Elliott J. Mermelstein* for respondent.

KLEINFELD, J. This appeal presents the novel question whether the Surrogate's Court may appoint an ancillary administrator for a nonresident decedent whose only " asset " within this State is his right to defense and indemnity, as an " additional insured ", under an automobile liability policy issued here to a New York resident.

On August 25, 1954, Mabel Wells was injured in an automobile accident in Wyoming. The injury occurred while she was a passenger in a car owned by Walter Wells and operated by Robert Riggle with the owner's permission. Robert Riggle was a resident of Illinois; Mabel and Walter Wells resided in Rockville Centre, Nassau County, New York.

At the time of the accident, Walter Wells had a $50,000 liability policy on his car, issued to him in New York by a foreign insurance company which was licensed to do business here. This policy, which is in the usual form, obligated the insurer to defend the insured and to pay any judgment recovered against him; it also covered, as an " additional insured ", any person driving Wells' car with his permission.

In 1955, Mabel Wells started an action to recover damages for personal injuries against Riggle, in the Supreme Court, Nassau County, and served the summons on him personally in New York State. The insurer undertook the defense of this action, pursuant to its coverage of Riggle as an " additional insured " under Walter Wells' policy.

On January 27, 1958 Riggle, still a resident of Illinois, died in that State, and appellant, his widow, was appointed executrix of his will by an Illinois court. On January 9, 1959, Mabel Wells applied to the Surrogate's Court, Nassau County, for the appointment of an ancillary administrator, c. t. a., in Riggle's estate. Her purpose, of course, was to have a local representative whom she could substitute for Riggle as a party defendant in her action (see Cosgrove v. Weierman, 3 A D 2d 940; McMaster v. Gould, 240 N. Y. 379). On February 16, 1959, while this application was pending in the Surrogate's Court, the attorney representing Riggle in the personal injury action (actually the insurer's attorney) moved to dismiss that action on the ground that Riggle's death had deprived the court of jurisdiction. This motion was denied by the Special Term without prejudice to renewal in the event that the Surrogate refused to issue ancillary letters in Riggle's estate.

In the proceeding for the appointment of an ancillary administrator, Riggle's executrix appeared specially and objected to the issuance of letters on the ground that Riggle was a

nonresident without any assets in this State. On the other hand, respondent, Mabel Wells, urged that the automobile liability policy, under which the insurer was obligated to defend and indemnify and was, in fact, defending Riggle in the Nassau County action, constituted an asset of Riggle's estate, located within Nassau County. In a well-reasoned, scholarly opinion, the learned Surrogate held that the insurance policy was a sufficient "res, asset and/or debt" within Nassau County to confer jurisdiction for the appointment of an ancillary administrator, and he directed the issuance of ancillary letters testamentary to Riggle's executrix or, alternatively, the issuance of letters of administration, *c. t. a.*, to the County Treasurer, as Public Administrator of Nassau County. We believe that determination was correct.

Unquestionably, an ancillary administrator may be appointed for a nonresident, who has died outside this State, only if he left "personal property" within the county (Surrogate's Ct. Act, § 45). The term "'personal property' includes all property that is not real property" (32 Words & Phrases, p. 480; Restatement, Property, § 8, comment *c*). It also includes "a debt owing to a decedent by a resident of the state" (Surrogate's Ct. Act, § 47). In Webster's New International Dictionary (2d ed.), the word "debt" is defined as "That which is due from one person to another, whether money, goods or services * * * an obligation or liability".

The decisions dealing with the question as to whether there is property within the State sufficient to confer jurisdiction on our courts generally use the words "assets" or "res", instead of the statutory words "personal property". Black's Law Dictionary defines "res" as "everything that may form an *object* of rights". It includes "an object, subject matter or *status*". And in section 467.3 of volume 3 of Beale on Conflict of Laws appears the following (p. 1452): "A simple contract debt is ordinarily said to be assets at the domicil of the debtor * * *. What we mean * * * is that the existence of the debt is sufficient cause for the appointment [of an administrator]. The word *assets*, as early used by the courts of probate, is the Norman French 'assetz', the modern French 'assez', meaning sufficient, enough."

In New York, it is well settled that, for the purpose of ancillary administration, a debt is an asset situated at the residence of the debtor (Surrogate's Ct. Act, § 47; *Matter of Rogers*, 225 App. Div. 286, 289, affd. on other grounds 254 N. Y. 592; *Fox* v. *Carr*, 16 Hun 434; *Sulz* v. *Mutual Reserve Fund Life Assn.*, 145 N. Y. 563, 571; 11 Am. Jur., Conflict of Laws, p. 384).

The precise question as to whether a liability insurer's obligation to defend and exonerate its insured constitutes such " debt " of the insurer, " asset " of the insured, or " res " within the jurisdiction as will support appointment of an ancillary administrator for a nonresident insured, has never been adjudicated in New York. It has, however, arisen in a number of other States, and the decisions are somewhat contradictory. One line of cases, following *Matter of Rogers* (164 Kan. 492 [1948]), seems to hold that a nonresident insured's rights under a liability insurance policy do not constitute an asset justifying the issuance of ancillary letters (see *Wheat* v. *Fidelity & Cas. Co. of N. Y.*, 128 Col. 236; *Olson* v. *Preferred Automobile Ins. Co.*, 259 Mich. 612). A contrary line of cases, following *Robinson* v. *Carroll* (87 N. H. 114 [1934]), holds that the insurer's obligation under its policy is a debt which constitutes an asset of the insured situated at the debtor's (i.e., the insurer's) residence and that this debt is sufficient to support the issuance of ancillary letters on the nonresident insured's estate in a State where the insurer is authorized to do business (see *Gordon* v. *Shea*, 300 Mass. 95; *Furst* v. *Brady*, 375 Ill. 425; *Matter of Vilas*, 166 Ore. 115; *Liberty* v. *Kinney*, 242 Iowa 656). This line of cases following the New Hampshire rule of *Robinson* v. *Carroll* (*supra*) lays down the more widely accepted and, we think, the sounder principle. It has been adopted, for example, by American Jurisprudence, which states (21 Am. Jur., Executors and Administrators, §§ 40, 41):

" [T]he protection afforded by a policy of insurance issued by an insurer who is suable in any county in the state meets the jurisdictional requirements as to estate in the county in which the appointment of an administrator of the estate of an insured is sought for the purpose of bringing action on the liability insured against. * * *

" A mere claim or right to enforce some claim, whether legal or equitable * * * is sufficient foundation for the issuing of letters of administration." (To the same effect see 33 C. J. S., Executors and Administrators, § 20, subd. b.)

Indeed, even the Kansas case (*Matter of Rogers,* 164 Kan. 492, *supra*), which is the leading authority for the contrary and, in our opinion, the less sound rule, did not expressly hold that the liability policy was *not* an asset of the deceased nonresident's estate. There, the refusal to appoint an administrator was based solely on the ground that, under Kansas law, the situs of an asset (if the policy rights be an asset) or of a debt owed to the nonresident decedent (if the policy obligations be a debt owed to him), would in either event be at the

decedent's domicile, and, *inter alia,* the court noted that the States which permitted appointment of an administrator in such circumstances (i.e., New Hampshire, Massachusetts, Illinois and Oregon) have a different rule than Kansas as to situs.

In the recent similar case of *Matter of Klipple* (101 So. 2d 924 [Fla.]), a denial of letters of administration was based solely on the ground that the insurer (a Michigan carrier) was not authorized to do business in Florida, but the Florida court conceded that the insurer's liability on its policy is "property" which would have had a situs in Florida if the carrier were authorized to do business there.

In the case of *Matter of Roche* (16 N. J. 579, 585) the court split 4 to 3, with the majority following the Kansas rule and the minority following the New Hampshire rule, the result being that close notwithstanding that suit had not been commenced in New Jersey, the injured person was not a resident of New Jersey, and the policy had been issued in New York to a New York resident, so it had no situs in New Jersey and that State had "no interest in its enforcement which confers jurisdiction through ancillary administration to determine the underlying issue of liability in tort as between the nonresident insured and the nonresident injured third persons." It well may be that the result in the *Roche* case would have been different if the facts there were like those in the case at bar.

As noted above, the leading authority for the New Hampshire rule is *Robinson* v. *Carroll* (87 N. H. 114, *supra*). The *Robinson* case, like the case at bar, involved a decedent who, as driver of a car, was an "additional insured" under the car owner's liability policy. There, the court said (pp. 115, 117–119):

"Assuming * * * that the decedent left [no] general estate, the case presents the inquiry whether an alleged liability of a decedent is sufficient to entitle the claimant to require the probate court to appoint an administrator of the decedent's estate when satisfaction * * * of the liability upon its determination has been promised * * * to or in behalf of the decedent by a third party * * * and when the promisor is within the jurisdiction. * * *

"Although performance of the promise claimed as estate is not yet due * * * it is an obligation of a contractual nature. It is estate * * * owned by the decedent when he died. The event [the accident] had taken place on account of which he was entitled to protection if certain things were done. The claim which was then his is no different, to constitute estate, than an unmatured note. If the promise may not be

presently enforced, it has present value. A debt may have value before it becomes due, although it may eventually prove to be a loss. The conditions to which the promise is subject and which bar action on it until their fulfillment do not make it any the less an existing obligation. * * *

" The promisor is now locally present as though a resident and is subject to the service of process. There is nothing to indicate that local presence will not continue until the promise has become enforceable. * * * The obligation is now both subject to the jurisdiction and of value. * * *

" As the promisor may be sued in the county where administration is sought, the promise is estate there."

And in *Gordon* v. *Shea* (300 Mass. 95, 100–101 *supra*) the court said:

" If, however, ' the right of exoneration and indemnity under the policy of insurance issued to the deceased ' would not be estate of the deceased until judgment was recovered against him in the tort action, the appointment would not be invalidated, because a judgment recovered subsequently to the appointment affords an ' occasion for the administrator to act [and] * * * the appointment is valid.' Am. Law Inst. Restatement: Conflict of Laws, § 467, Comment a. * * * The pendency of the actions at law in a court of this Commonwealth [Massachusetts] in the circumstances here disclosed, where personal jurisdiction had been obtained over the deceased, was sufficient to support the appointment. The actions survived and might be prosecuted after the death of [the insured]. * * *

" The result is that the right of [the insured] under his policy of insurance was estate within this Commonwealth adequate to support the appointment of an administratrix."

We think the principles enunciated in the *Robinson* and *Gordon* cases are sound and should be followed here. In this case, the injured claimant is a Nassau County resident; the insurance policy was issued in Nassau County to a Nassau County resident by a foreign carrier authorized to do business in New York and amenable to process in Nassau County; the insurer charged a premium of $63.25 for its promise to defend and exonerate the primary insured and any " additional insureds ", thus establishing that its obligations under the policy have at least that value; not only did the insurer incur its obligations here, but it actually entered upon their performance here, since the tort action against the decedent was instituted in Nassau County in 1955, and the insurer has been defending that action pursuant to its obligation under the policy; this presently-being-executed obligation to defend (and

decedent's concomitant right to be defended) is, of course, a present obligation with an obvious, presently existing, monetary value; it is in no way contingent, and the insurer would seem now to be bound to complete its obligations under the policy. In view of all these circumstances, it appears plain to us that there is sufficient " res ", " asset ", or " debt owed to decedent ", situated within Nassau County, to justify the appointment of an ancillary administrator.

Cases concerning the lack of jurisdiction over foreign representatives are wholly inapplicable, as we are here concerned with the appointment of a *local* administrator, precisely because we could not obtain jurisdiction over the foreign executrix. In this connection, it may also be noted that in some exceptional cases even actions against foreign representatives have been entertained where the denial of jurisdiction would have resulted in a failure of justice (*Leighton* v. *Roper,* 300 N. Y. 434, 438; *Kirkbride* v. *Van Note,* 275 N. Y. 244, 250). Here, of course, we do not have to go that far, since we are asked only to permit the appointment of an ancillary representative, over whom we clearly would have jurisdiction to the extent of the obligation due decedent from the insurer under the policy.

The question of appellant's right to oppose the appointment of an ancillary administrator, under a special notice of appearance, has not been raised in this proceeding, and we do not pass on that point.

We conclude that the Surrogate's Court, Nassau County, had jurisdiction to issue ancillary letters.

The decree should be affirmed, without costs.

NOLAN, P. J., UGHETTA, CHRIST and BRENNAN, JJ., concur.

Decree affirmed, without costs.