WILLIAM S. BANTA, administrator of Jane Ann Moore, deceased, vs. JOHN L. MOORE.

J. A. M., domiciled in New Jersey, died intestate. Letters of administration on her estate were granted to the complainant, in the place of the domicil of the intestate. The defendant, a brother and one of the next of kin of the intestate, obtained possession of some of the personal property of the deceased, consisting of bonds and stock of the Buffalo, New York, and Erie Railroad, a bond of the New York and New Haven Railroad Company, and a note or notes of a brother of the intestate, who resided in New Jersey, and procured administration of the personal estate of the intestate to be granted to him by the surrogate of the city and county of New York. Complainant filed his bill in this court against the defendant, alleging the above facts, and also that defendant had received other considerable sums of money in New York as administrator; that there were no debts, and praying a discovery and account of the amount in the defendant's hands, and a decree that he pay over such amount to the complainant. On a demurrer to this bill, it was *held*—

That, as the intestate left assets both in New York and in this state, administration was rightfully granted in both states, although the right of succession to the personal estate is to be regulated by the law of the domicil.

Administration of the estate must be in the jurisdiction in which possession of it was taken and held under lawful authority, and when there are two administrators in different countries, each portion of it must be administered in the country where possession of it was so taken.

The person to whom administration is granted is bound to administer the estate and pay the debts of the deceased. His duties remain the same though the intestate may have been domiciled elsewhere. The right of administration is irrespective of the domicil of the intestate.

The validity of the letters of administration in New York not being called in question, the claim of the complainant, that the defendant having, as such foreign administrator, collected funds of the intestate, is bound to account for them to the administrator in this state, to be administered here, is without foundation in principle.

The bill alleges that, as to one or more of the securities taken and held by defendant, the debtor resided and still resides in this state. The foreign

administration gave no title to these securities as against the adminis-
trator in this state. The bill prays a discovery and account as to these
securities, and for that purpose it can be maintained.

The demurrer is too general; it is applied to the whole bill, but is good as
to part only, and must be overruled.

---

*Zabriskie,* for complainant.

*Gilchrist,* for defendant.

THE CHANCELLOR.. The bill charges, that on or about the
tenth of June, 1858, Jane Ann Moore, the complainant's in-
testate, died at Hackensack, in the county of Bergen, where
she resided at the time of her death, and where she had re-
sided for nearly the whole of her life. She died intestate,
leaving her mother, several brothers and sisters, and the
children of a deceased brother, her next of kin. At the time
of her death she was possessed of and entitled to personal
property of the value of several thousand dollars, consisting,
in part, of railroad stock and bonds, and of notes particu-
larly specified in the bill; and the bonds, scrip, notes, and
evidences of her title to said property were, at the time of
her death, in her possession at her residence in Hackensack.
Administration upon her estate was granted to the com-
plainant, by the surrogate of the county of Bergen, on the
twenty-fifth of January, 1860. Shortly after the death of
the intestate, John L. Moore, one of her brothers and next
of kin, took from her effects and papers, in the house where
she resided at her death, three bonds of the Buffalo, New
York, and Erie Railroad for $1000 each; two certificates of
stock of said company; a bond of the New York and New
Haven Railroad Company for $1000; a note or notes of her
brother, Charles Moore, who also resided at Hackensack, for
$575 or thereabouts, and procured administration of the per-
sonal estate of the said intestate to be granted to him by the
surrogate of the city and county of New York; that the said
John L. Moore, after said grant of administration to him,

and by virtue thereof, disposed of said four railroad bonds, and collected a large amount of interest due thereon, sold the railroad stock, and also collected and received from the city chamberlain of the city of New York $803.35, deposited with him, due and belonging to said intestate, or which became due to her estate by the death of her mother, on the third of January, 1860, and also collected and received $1250 for the interest of the intestate in the ship Jamestown, and he still retains the said note or notes of Charles Moore.

The bill insists that, by reason of the residence of the intestate in the county of Bergen at the time of her death, the right and jurisdiction of granting administration of her personal effects was in the surrogate of said county and in the Ordinary of this state, and that the right and jurisdiction of settling the accounts of said estate, and of decreeing distribution thereof, was exclusively in the Orphans Court of said county and in the Prerogative Court of this state, and that such distribution could only be made according to the laws of the state of New Jersey, the domicil of said decedent; that auxiliary letters of administration might be granted in other states and jurisdictions to collect and get possession of the property, choses in action, or other assets situate in such jurisdiction, but that the same must be paid over to the administrator appointed by the jurisdiction in the state of the intestate's domicil.

The bill further charges, that the said John L. Moore has not paid out of the moneys so received by him any debts owing by the said decedent, she not owing any at her death, and has only accounted to the next of kin of the decedent for a sum not exceeding $1200; that he neglects to settle up said estate, and refuses to pay over the personal estate in his hands to the complainant, who, as administrator in the place of domicil, is entitled to receive the same, but has converted the same to his own use; and that he retains the notes of the said Charles Moore, and that, by reason thereof, the amount due thereon will be lost.

The bill prays a discovery of the securities and property

of the intestate taken by the defendant, and of the amount collected by him, and an account of the amounts received by the defendant, and for which he is accountable, and that he may be decreed to pay the same to the complainant, as administrator of said intestate, to be distributed among her next of kin according to law.

To this bill the defendant demurs.

Upon the facts disclosed by the bill, it is clear that the complainant's intestate died leaving assets both in New York and in this state.   Administration was rightfully granted in both states.   The domicil of the intestate was in this state. The right of succession to the personal estate is to be regulated by the law of the domicil.   But by whom are the assets to be administered, by the administrator in this state or by the administrator in New York?

The principle is well settled, that the administration of the estate must be in the jurisdiction in which possession was taken and held of it under lawful authority; and where there are two administrators in different countries, each portion of it must be administered in the country where possession of it is taken under lawful authority.   1 *Williams on Ex'rs* 356; 2 *Ibid.* 1414.

The person to whom administration is granted is bound to administer the estate and pay the debts of the deceased. His duties remain the same though the intestate may have been domiciled elsewhere.   The right of administration is irrespective of the domicil of the intestate.

Thus, where the domicil was in India, the administrator, under letters granted in India, was held entitled to hold all the property in India at the intestate's death, though afterwards transmitted to England, against the administrator appointed in England, though needed to pay debts there. *Currie* v. *Buchan,* 1 *Dowl. & Ry.* 35.

On the other hand, where the testator was domiciled in Scotland, and administration was granted upon the personal estate in England, it was held that the trustees under the will in Scotland could not call the personal estate out of the

hands of the administrator in England, but that it must be administered in England by virtue of the letters of administration. *Preston* v. *Lord Melville,* 8 *Clark & Fin.* 1.

The subject has been elaborately discussed, and the principle fully established by the highest judicial authority in this country. *Harvey* v. *Richards,* 1 *Mason* 381; *Vaughan* v. *Northup,* 15 *Peters* 1; *Story's Conf. of Laws,* § 513, 513 *a;* 2 *Kent's Com.* 431—435.

Where administration has been granted in the place of the testator's domicil, and auxiliary administration for the purpose of collecting debts has been granted in a foreign jurisdiction, where the personal estate, or any part of it, may be situated, or the debtor resides, all that can be required, if the fund in the hands of the foreign administrator is needed for the purposes of due administration in the place of the domicil, is its transmission or distribution after all the claims against the foreign administration have been duly ascertained and settled. *Story on Conf. of Laws,* § 518; 2 *Williams on Ex'rs* 1415.

The principle, that the personal estate of the intestate, wherever it may be, constitutes assets, and that assets in any part of the world constitute assets in every part of the world, is not called in question. The only question is, by whom the assets are to be administered. Nor is it designed to call in question the right of the administrator in the place of the domicil, where foreign administration has not been granted to sell and transfer the securities that may come into his hands, and to collect debts due the intestate, wherever the debtors may reside. For the purposes of this inquiry, it will be assumed that all the railroad bonds and negotiable securities of the intestate which came to the hands of the administrator in this state might have been lawfully transferred, and all debts due collected wherever the debtor resided, and the proceeds administered as assets here. But it is admitted that none of the securities ever came to the hands of the administrator in this state to be assigned or sold by him, and it is also certain that the admin-

istrator could not, by virtue of the letters of administration granted in this state, have enforced the collection of debts due from debtors residing in New York. That could only have been done by virtue of letters of administration granted there. The bill admits that the securities were transferred, and the debts due in New York were collected by virtue of the letters of administration granted in that state. The validity of those letters, and the right of the administrator to collect the funds within that jurisdiction, is not called in question by the bill; but it is claimed that the administrator, having collected the funds, is bound to account for them to the administrator in this state, to be administered here. The claim, as has been said, is without foundation in principle. Neither administrator has a claim against the funds in the hands of the other. Each administrator is to be called to account for the funds in his hands in the jurisdiction where he was appointed. It was suggested, upon the argument, that the time limited by law for settlement by the administrator in New York had elapsed, and the presumption must be that the estate there has been duly administered and settled. There is no such averment in the bill. On the contrary, it is expressly alleged that the administrator in New York has neglected to make settlement. The proper mode of relief would seem to be to require him to make settlement in that state. It is clear that the administration cannot be withdrawn from his hands, nor the settlement of his accounts transferred to this court from the appropriate tribunal in the state where the administration was granted.

It is charged, in the bill, that the securities in controversy, shortly after the death of the intestate, were taken by the defendant, who was one of her brothers and next of kin, from her effects and papers in the house where she resided at her death. It is not perceived that this circumstance can materially affect the merits of the controversy. It does not appear that they were wrongfully taken. As a brother and one of the next of kin entitled to administer, the defendant

might lawfully have taken them. It is not even alleged that they were taken without the consent or against the will of any of the next of kin. So far as appears by any averment in the bill, they may have been taken by the consent of all parties interested, for the purpose of being administered upon. But if the fact were otherwise, and they were removed without consent by one of the next of kin for the purpose of administration, and were rightfully used and appropriated in the course of administration, the circumstances under which they were obtained constitute no ground of equitable relief.

In regard to one or more of the securities alleged to have been taken and held by the defendant, it is charged that the debtor resided, and still resides in this state. To these securities it is clear that the foreign administration gave the defendant no title. They constituted no assets to be administered by him. He has no title, legal or equitable, to them as against the administrator in this state. As to these, the bill prays a discovery and an account, and the complainant is entitled to relief. The court will not turn the party round to an action at law, even if that be maintainable. The remedy here is more complete and effective. *Story's Eq. Pl.*, § 64 *k*, 67.

The demurrer is too general. It is applied to the whole bill, but is good as to part only, and must be overruled. *Story's Eq. Pl.* 443; *Cooper's Eq. Pl.* 12.