ALBERT C. WALL, administrator of F. Augustus Heinze, deceased, &c., complainant-appellant,

*v.*

AMERICAN SMELTING AND REFINING COMPANY et al., defendants-respondents.

[Argued June 26th, 1919. Decided November 17th, 1919.]

1. An intestate's beneficial interest in a royalty agreement with a foreign mining corporation, pledged to secure his debt to a New Jersey corporation doing business in New York, the place of primary administration where the claim secured might be enforced—*Held*, to constitute assets in New Jersey for the purpose of auxiliary administration.

2. Under section 29 of the Orphans Court act, where there is a domiciliary administrator, the application for letters auxiliary must come from such administrator, and if he fails to make the application within sixty days after the death of his decedent, a creditor or relative may do so upon notice to the domiciliary administrator, unless the latter waives the right to administer, which is equivalent to notice.

3. A bill by an auxiliary administrator to impress a trust upon assets in New Jersey, will be dismissed where the proceedings are not necessary, and are not instituted in good faith, the domiciliary administrator being able to sue, and there being no *bona fide* creditors within this state.

4. In a suit by an auxiliary administrator to impress a trust upon assets pledged by an intestate to secure a debt to a New Jersey corporation, evidence *held* to show that the proceedings were not instituted in good faith, and that there were no *bona fide* creditors within this state.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, and reported in *90 N. J. Eq. 469.*

*Messrs. Vredenburgh, Wall & Carey* and *Mr. Franklin Bien* (of the New York bar), of counsel for appellant.

*Messrs. Treacy & Milton,* for the respondent the American Smelting and Refining Company.

*Mr. Albert I. Drayton,* for the respondent the Miners Smelting Company.

*Mr. Gilbert Collins,* as *amicus curiæ,* for Mr. Fullerton, primary administrator.

The opinion of the court was delivered by

KALISCH, J.

This is an appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, dismissing complainant's bill of complaint. The facts are fully stated in the opinion by the vice-chancellor. It will, therefore, not be necessary to restate them, as it will be sufficient for our purpose to allude only to those facts which are essential to illustrate the legal rule applicable to the questions raised on this appeal.

Edwin Gould had a judgment for over a million dollars against F. Augustus Heinze, the complainant's decedent, which judgment was entered in the county of New York, on the fifteenth day of October, 1914. Heinze, the judgment debtor, died at Saratoga Springs, the place of his domicile, on November 4th, 1914. Administration was granted by the surrogate of Saratoga county to Mrs. Fleitman, a sister of the deceased, on the following day. She was removed by said surrogate on August 23d, 1916, on an application of Mr. Gould, on June 6th, 1916, and one Walter A. Fullerton was appointed in place and stead of Mrs. Fleitman. Shortly before Mr. Gould's application for Mrs. Fleitman's removal her brother, Arthur P. Heinze, applied to the surrogate of Hudson county for administration upon the estate of complainant's decedent upon the ground that there was personal property-choses in action, belonging to the estate of his deceased brother within that county, and creditors of the decedent living in this state. Although Mrs. Fleitman was still administratrix under her original appointment, and had at no time during the two years of her administration applied for auxiliary letters in this state, she gave Arthur P. Heinze, shortly before he applied for letters of administration in Hudson county, a waiver of her right to such administration.

If there were choses of action in this state belonging to the estate of the deceased, there was no legal obstacle in the way of Mrs. Fleitman to prevent her from enforcing them. Be that as it may, she apparently did not see fit to do so. The waiver of the right to administer in this state in favor of her brother and his application for letters in Hudson county upon the grounds that there were assets and creditors in this state clearly indicate that the object sought was to prevent any assets here from being transferred to New York, and thus fall within the grip of the preference of the Gould judgment. But whatever their motives may have been they cannot affect one way or another the legal situation arising from the facts under review. Following the order of events, we find that Mr. Heinze was removed from his administration and Mr. Wall was appointed administrator in the former's place and stead. As such substituted administrator, Mr. Wall instituted the present pro-

ceeding, the object of which is to allow the New Jersey assets to be distributed among creditors and escape the preference of the Gould judgment in New York.

The theory upon which the bill was dismissed in the court below, stated in a general way, was, that there were no assets in New Jersey, and therefore no auxiliary letters could have been properly granted by the surrogate.

With the view that there were no assets in New Jersey we cannot agree under the conceded facts of this case.

It appears that decedent was owner of some stocks but the certificates were deposited in New York, and that the corporations were not New Jersey corporations. The intestate was interested in some royalties on copper ore. The Silver King Company had agreed with the intestate in 1907 to sell him crude oil for a period of years. He assigned his interest to the Miners Smelting Company, who in turn sold its interest to McGuirk, who assigned to the intestate, so that the latter became entitled to the money payable under the agreement. He was indebted to the American Smelting Company for a loan, and to secure this, he and the Miners Smelting Company pledged their interest to the American Smelting Company. The outcome of this series of transactions is that the American Smelting Company stands in the place of Miners Smelting Company, and is entitled to the output of the ore upon paying the royalty therefor. To this royalty the estate is entitled. This constitutes assets in New Jersey within the rule stated by this court in *Amparo Mining Co.* v. *Fidelity Trust Co., 75 N. J. Eq. 555,* that the chose of action is in the jurisdiction where you would have to go to enforce it, and while this claim of the American Smelting Company might be enforced in New York, where it is doing business, it could only be enforced in some instances in New Jersey, its domicile. This conclusion, however, does not end the case, for the right of auxiliary administration is governed by section 29 of the Orphans Court act (*Comp. Stat. p. 3823*), which, in case of a domiciliary administrator, provides, *inter alia,* that if such administrator shall neglect for the space of sixty days after the death of his decedent to make application in this state for letters of administration, then upon

the application of any person alleging himself or herself to have any debt or legal claim against such decedent, which, by the laws of this state, survive against the personal representatives of parties deceased, the surrogate may issue letters of administration to such persons as he may select; and in case application is made under this section by any one except such domiciliary administrator, letters shall be granted upon such notice to such administrator. This makes it clear, that where there is a domiciliary administrator, the application for letters auxiliary must come from such administrator and if he fails to make the application within sixty days after the death of his decedent, a creditor or relative may do so, and then only upon notice to the domiciliary administrator.

It is manifest that the requirements of the provisions referred to were not strictly complied with. It may be said, however, with great force, that the fact that the domiciliary administratrix waived her right to administration was not only equivalent to the statutory notice of such application being made, but was a consenting act on her part that administration be granted in favor of the applicant.

This brings us to a consideration of two questions upon the solution of which this case must turn. *First.* Is this proceeding instituted in good faith? *Second.* Were there any *bona fide* New Jersey creditors? Both of these questions in the light of the facts and circumstances must be answered in the negative. As to the good faith of this proceeding. This has not been made plain to us. It is apparent that no administration in this state was necessary since even if it was necessary the domiciliary administratrix could sue. Mrs. Fleitman was domiciliary administratrix until she was removed on August 23d, 1916. She was appointed in 1914. In 1916, two months before Mr. Gould filed his petition for her removal, she waived her right of administration in this state in favor of her brother. It is fair to assume that she was aware at that time of Mr. Gould's intention to apply for her removal. In her answer to Mr. Gould's petition she tendered her resignation and consented that she be removed. Her brother was appointed administrator in this state on March 27th, 1916. She was still domiciliary administratrix.

She had had nearly two years in which to enforce any claim the estate had in New Jersey. She was removed August 23d, 1916, and Mr. Fullerton was immediately appointed her successor. It is to be noted that she had divested herself of the right, as domiciliary administratrix, to apply for auxiliary letters in New Jersey by her waiver in favor of her brother, which was very likely done in anticipation that Mr. Gould's action would result in her being removed, and to forestall her successor from making such application, if he saw fit. All this appears to be part of a scheme to prevent New Jersey assets from falling within the preference of the Gould judgment.

But an insuperable bar to the complainant's successfully maintaining this suit is, that there were no *bona fide* New Jersey creditors.

For the appellant, it is urged that the validity of the alleged claims could not be properly attacked in this suit since that was a matter which rested with the administrator, and if he did not object, it became a claim against the estate.

This proposition is palpably unsound. In the first place, the claim must be a legal one. The status of creditor can only arise from a valid obligation of the debtor. If there is no such valid obligation then it necessarily follows that there is neither a creditor nor a debtor. In fact, it appears, here, that the appellant in the courts below attempted to establish that there were New Jersey creditors and that they had valid claims against the estate. To that end the appellant produced Mr. Geer who testified that he had a claim of $250 for back salary due him from the decedent since November, 1907. He does not attempt to explain why this claim remained unpaid for seven years, or why he made no effort to have it paid in decedent's lifetime. A Mr. Schulz, who said he had charge of the books, testified that at the time of decedent's death there was due to Geer three months' salary, which, if true, would make Geer's claim $525 instead of $250. This witness further testified that he did not have charge of the books after September 30th, 1907, up to which date Geer had been paid in full, nevertheless he swears that there were three months' salary owing to Geer, whereas Geer says that the salary due him was $75 for October, and $175 for

November, 1907. Geer claims that he had another transaction with decedent in 1909. Nothing appears to have been said then by the former to the latter about any claim for back salary, although this was a transaction in which it appears that the decedent gave Geer a stock note for the sum of $10,000, upon which note it is claimed there still remains unpaid $2,500, and which Geer assigned to the Assets Developing Company, of which corporation the complainant's predecessor, in administering the decedent's estate, was president.

If further appears, that when Geer made his claim against the estate for his back salary he had the stock note in his possession on which, according to his story, there was due him $2,500, and he makes no satisfactory explanation why he made his claim only for the back salary. Geer further testified that he received no money from the Assets company for the note which he subsequently assigned to it.

The evidence satisfies us that neither Geer's claim for salary, nor the Assets company's claim, on the note, is real, and that neither is a New Jersey creditor of the deceased.

The only other claim made against the estate is that of the United Copper Company, a corporation of this state. This claim is made up of two alleged claims of the Western Development Company, a foreign corporation, of which the wife of Mr. Geer, who figures so prominently in all these transactions, is the president, and of an alleged claim of Ruth Noyes Heinze, the widow of the deceased, a resident of the State of New York. The Western Development Company assigned their claims to the United Copper Company on December 12th and 20th, 1916, and Mrs. Heinze assigned her claim to the Copper company on December 21st, 1916. These claims were filed on December 22d, 1916, with Arthur P. Heinze, who was appointed in this state on March 27th, 1916, under circumstances which have been above detailed, and who was succeeded by the appellant as such administrator on January 18th, 1917.

It cannot successfully escape notice that at the time of the decedent's death and of the appointment of an administrator in this state there were no *bona fide* New Jersey creditors, and that the artificial process which has been resorted to for the creation

of New Jersey creditors fails of its purpose. For the reason that there were no *bona fide* New Jersey creditors the decree below must be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEP-PENHEIMER, WILLIAMS, GARDNER, ACKERSON—13.

*For reversal*—None.