Belknap,
Sept. 21, 1934.

RICHARD W. ROBINSON, *Adm'r v.* LILLIAN D. CARROLL, *Ap'ee.*

*Wayne Plummer, John Sanders* and *Robert W. Upton,* by brief, for the appellant.

*Tilton & Tilton,* by brief, for Lillian Dana Carroll, the decedent's adoptive mother.

ALLEN, J. Assuming that the evidence has no tendency to show that the decedent left any general estate, the case presents the inquiry whether an alleged liability of a decedent is sufficient to entitle the claimant to require the probate court to appoint an administrator of the decedent's estate when satisfaction, in whole or in part, of the liability upon its determination has been promised under certain conditions to or in behalf of the decedent by a third party, without showing estate of a general character, and when the promisor is within the jurisdiction.

The statute (P. L., c. 293, s. 8) to be construed reads as follows: "Probate of the will and granting administration on the estate of a person deceased shall belong to the judge [of probate] for the county in which such person was last an inhabitant; but if such person was not an inhabitant of this state the same shall belong to the judge for any county in which such person had estate, or in which the personal representative or kin of such person has a cause of action."

Administration is thus to be granted "on the estate" of a decedent resident, and as to a decedent non-resident, in any county where he "had estate." Death alone is not enough to justify the exercise of the appointive authority, nor is it permitted by any reason or occasion other than estate. For both resident and non-resident decedents there must be estate within the legislative meaning of the word. By the constitution (Const., *art.* 80) probate courts have jurisdiction in granting administration, to be exercised in such manner as the legislature may direct. Their jurisdiction is exclusive (*Glover* v. *Baker,* 76 N. H. 393, 398, 399; *Barrett* v. *Cady,* 78 N. H. 60, 64), but they "have such powers and only such as the legislature gives them" (*Woodbury's Appeal,* 78 N. H. 50, 52).

Confirmation of the need of estate is found in the amendatory act (Laws 1905, c. 8) by which the authority to appoint was extended to cases where the administrator or kin have a cause of action. Since the proceeds of actions surviving by statute but not by common law are not assets of the estate (*Davis* v. *Herbert,* 78 N. H. 179), the amendment implies its need to give authority to appoint in cases where no estate is left but a cause of action with a statutory survival in favor of certain designated beneficiaries exists.

But the prerequisite of proof of estate in an appointment is often satisfied by a claim of estate. This follows from the nature of things. When the decedent's title to his only property is in dispute, the probate court does not try the issue as determinative whether an administrator shall be appointed, but appoints one so that the rights of the decedent's estate may not be lost through non-assertion. Appointment or refusal to appoint does not depend upon the probable merits of the decedent's title or claim. It may be thought too doubtful to have appraisal value, but if anyone having a proper interest deems it worth while to be asserted, an appointment should be made. The right to prosecute a claim having value if finally proved meritorious is in itself sufficient to meet the statutory test of estate.

By a statute (P. L., *c.* 301, *s.* 1) any person "suspected of having concealed, embezzled or conveyed away any of the personal estate of a deceased person may, upon complaint of the administrator, . . . be examined, under oath, for discovery of the same." If there were no other estate, it would hardly be contended that no appointment should be made because it was only suspected there was some. The probate court has no power to find what the examination shows (*Dodge* v. *McNeil*, 62 N. H. 168), and the purpose of the statute is only to facilitate in reaching possible assets. Providing a method of search, it implies authority to appoint so that the method may be employed. An administrator may by bill seek discovery of assets and cancelation of fraudulent conveyances by a decedent, so far as necessary to satisfy the claims of the latter's creditors. *Matthews* v. *Hutchins*, 68 N. H. 412; *Preston* v. *Cutter*, 64 N. H. 461, 468; *Janvrin* v. *Curtis*, 63 N. H. 312; *Abbott* v. *Tenney*, 18 N. H. 109. These cases hold that the administrator represents the creditors and stands in their right, the decedent having no right to undo the fraud. Since the debtor's death does not defeat the creditors' rights to reach the assets, their right to have an administrator appointed is a necessary incident of their right to reach the assets. The assets are not estate belonging to the decedent at his death and the heir may claim no part of them. But so far as needed to pay debts they are assets of the estate. It has never been suggested that if there were no other assets, appointment would not be within the court's power or that proof of the fraud would be essential to the exercise of the power.

If one or more of a number of claimants to property die, the right of a stakeholder that there should be administrators for the estates of the decedent claimants would not be defeated by lack of proof of property belonging to them.

The statute is to be examined in the light of the respective jurisdictions of the probate and other courts. The limitations of probate jurisdiction which bar its courts from passing on claims determinable in other tribunals are not removed in connection with their power of appointment. If they were, the strange result would be that they might indirectly maintain or defeat a cause of action although without authority to try its merits and render judgment thereon. To make an appointment is not to hold valid the claim which the appointee desires to prosecute, and the denial of an appointment because the claim is deemed to be without merit is unwarranted. In depriving those properly interested of the right to assert the decedent's claim the ruling deprives other tribunals of jurisdiction rightfully theirs. The statute is not intended to produce an outcome of that sort. The probate courts are not concerned with things "incident to the business of conducting the administration." *Patten* v. *Patten*, 79 N. H. 388, 392; *Rockwell* v. *Dow*, 85 N. H. 58, 66.

Subject to the rights of those first entitled, a creditor may petition for an appointment to be made. P. L., c. 299, ss. 2, 3. That is the case here. But it is no requirement that he should prove his claim to be valid before the petition is granted. It is enough if he claims honestly and seasonably to be a creditor. There is no more occasion for proof of actual assets than to establish his claim, in granting his petition. No injustice can result from this narrowed scope of the proper inquiry to be made by the court as to the status of the petitioner for administration or as to the existence of assets. On the other hand, to permit the court to decide these matters would lead to inconsistency, confusion and conflict.

Although performance of the promise claimed as estate is not yet due and will not be until its conditions are fulfilled, it is an obligation of a contractual nature. It is estate, in the statutory meaning, owned by the decedent when he died. The event had taken place on account of which he was entitled to protection if certain things were done. The claim which was then his is no different, to constitute estate, than an unmatured note. If the promise may not be presently enforced, it has present value. A debt may have value before it becomes due, although it may eventually prove to be a loss. The conditions to which the promise is subject and which bar action on it until their fulfillment do not make it any the less an existing obligation.

While in the claimant's action to establish the liability of the estate he may not make the promisor a party by trustee-process (*Palmer* v.

*Company*, 79 N. H. 28), the promisor may thus be joined in a suit upon the judgment obtained (*Lombard* v. *Company*, 78 N. H. 110), or the promisor's liability may then be enforced by bill (*Sanders* v. *Insurance Co.*, 72 N. H. 485). There is thus at present an available asset for at least partial satisfaction of the claim. If jurisdiction over the promisor for some unforeseen reason should happen to fail when the promise becomes enforceable, it would not alter the situation existing at the time of death. The promisor is now locally present as though a resident and is subject to the service of process. There is nothing to indicate that local presence will not continue until the promise has become enforceable. In parallel reasoning, the promisor's eventual inability to discharge its obligation would not show that the obligation has no present value. The obligation is now both subject to the jurisdiction and of value. It is probable that if the claim of liability is established, the promisor will then be present so that its obligation may be here enforced. No view is intended to be expressed on the right of administration when the promisor at the time of the promisee's death is not within the jurisdiction.

The question of the *situs* of the promise as a technical matter presents no difficulties. "A debt is a legal relation between two parties and, if we think of facts, is situated at least as much with the debtor against whom the obligation must be enforced as it is with the creditor. To say that a debt has a situs with the creditor is merely to clothe a foregone conclusion with a fiction." *Safe Deposit &c. Co.* v. *Virginia*, 280 U. S. 83, 97.

For the purposes of ownership the creditor's domicil is generally regarded determinative of the fictional locality of the debt. But since enforcement may be only where the debtor or his property is found, the debt must be owned by the creditor there as well as owed by the debtor. While as to ownership, "debts can have no locality separate from the parties to whom they are due" (*Cleveland &c. Co.* v. *Pennsylvania*, 15 Wall. 300, 320), in respect to enforcement, "It is useless to say that a chose in action follows the person of the creditor when the matter in hand is the enforcement of payment by a suit at law" (11 Harv. Law Rev. 101). "For the purpose of collection a debt is always ambulatory, and accompanies the person of a debtor." 5 R. C. L. 931. This is the well settled rule here. *Leonard* v. *Putnam*, 51 N. H. 247, 251; *Kidd* v. *Company*, 72 N. H. 273, 285; *Fitzhugh* v. *Railway*, 79 N. H. 371, 375; *Shiatte* v. *Company*, 81 N. H. 294, 295.

In respect to ownership, the decedent at his death was a local resident. If the residence was but temporary, yet he was more than a

transient. If his domicil was elsewhere, he was in fact living here. His intangibles were with him and where he was as much as anywhere else for the purpose of control and possession. In respect to enforcement, the promisor has a temporary residence here, prospectively to continue. Thus, whether *situs* is considered from the creditor's or the debtor's standpoint, its demands are met.

The claimant is a resident and the cause of action upon which the claim of liability is founded arose here. The situation is therefore not one involving foreign law, as was the case in *Jackson & Sons* v. *Insurance Co.*, 86 N. H. 341.

By reason of the views expressed, whether the decedent was domiciled or had only a temporary residence here at his death, becomes immaterial to the issue. As the promisor may be sued in the county where administration is sought, the promise is estate there.

*Appointment ordered.*

WOODBURY J., was absent: the others concurred.