IN THE MATTER OF THE ESTATE OF FRANK T. ROCHE, DECEASED.

MARION D. KEEFE, GENERAL ADMINISTRATRIX OF THE ESTATE OF LAWRENCE V. KEEFE, DECEASED, PLAINTIFF-APPELLANT, v. GRETA M. ROCHE, PETER A. ROCHE, AND THOMAS S. ROCHE, NEXT OF KIN OF FRANK T. ROCHE, DECEASED, DEFENDANTS-RESPONDENTS.

Argued October 11 and 18, 1954—Decided November 22, 1954.

580

*Mr. Brendan T. Byrne* argued the cause for appellant (*Mr. John W. McGeehan, Jr.,* attorney).

*Mr. Samuel Doan* argued the cause for respondents (*Mr. Charles C. Staller,* attorney).

The opinion of the court was delivered by

HEHER, J. The widow of Lawrence V. Keefe and his general administratrix under letters issued in New York, the place of his domicil, and also his administratrix *ad prosequendum* by appointment of the Surrogate of Passaic County, New Jersey, was denied ancillary administration in New Jersey of the estate of Frank T. Roche, deceased, whose widow is his domiciliary administratrix by designation of a New York tribunal; and she appeals from the judgment of dismissal entered in the Chancery Division of the Superior Court. 30 *N. J. Super.* 572.

Ancillary administration in New Jersey is sought for the prosecution here of an action in tort for negligence attributed to Roche in the operation of his automobile on a public highway in Clifton, New Jersey, on June 27, 1951, in consequence of which Roche and Keefe suffered fatal injuries. By this means, it is designed to secure service of process on the Roche estate in an *in personam* proceeding in New Jersey. The denial of ancillary administration was predicated upon the failure of proof of the statutory prerequisite of property of the deceased within our jurisdiction requiring administration.

The case is here by certification on our own motion of the appeal to the Appellate Division.

All the parties to the action are and have been at all times material to the inquiry domiciliaries and residents of the State of New York. This was so of both Keefe and Roche, the victims of the fatal collision; and the same is true of their respective personal representatives and their next of kin as well. Keefe resided at Briarcliff Manor, New York, and Roche at Pelham, New York; and their surviving kin have continued their several residences in New York. New Jersey has no relation to the ensuing litigious controversy save that the fatalities were the consequence of a motor vehicular collision on one of its highways and the deceased Roche held a policy of public liability insurance issued in New York by a foreign corporate insurer then and now authorized to pursue its business in New Jersey. Keefe and Roche were in an

automobile owned and driven by the latter which came into collision with a truck of The Port Murray Dairy Co., Inc., a New Jersey corporation, operated by one Alfred Taylor, a New Jersey resident.

For reasons of her own, Keefe's widow and domiciliary general administratrix of his estate, by appointment of the New York tribunal, as just said, determined to invoke New Jersey's jurisdiction to enforce by a proceeding in New Jersey the right of action for the alleged *delictum* given by its Death Act, *R. S.* 2:47–1 *et seq.*, now *N. J. S.* 2*A*:31–1 *et seq.* Respondents suggest that Keefe's administratrix and next of kin fear that under the law of New York the "claim by a co-employee against his co-employee" is "doubtful." *Vide Stacy v. Greenberg,* 14 *N. J.* 262 (1954). But no matter! *In personam* jurisdiction could not be had in New Jersey against Roche's nonresident administratrix, through service of process upon the State Director of the Division of Motor Vehicles, as the nonresident highway user's agent, for *R. S.* 39:7–2, as amended by *L.* 1950, *c.* 251, is not embracive of the user's personal representative after death, assuming that a legislative regulation to this end would have constitutional validity. Such is not within the statutory agency of service. *Young v. Potter Title & Trust Co.,* 114 *N. J. L.* 561 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 518 (*E. & A.* 1935). An *in personam* judgment entered against the nonresident domiciliary administrator on the basis of such service would be utterly void for want of jurisdiction. *Whalen v. Young,* 15 *N. J.* 321 (1954). So much is conceded.

But, in an endeavor to acquire *in personam* jurisdiction by other means, Keefe's widow on June 20, 1952, on her own individual petition, was appointed administratrix *ad prosequendum* of her deceased husband by the Surrogate of Passaic County, New Jersey, to prosecute an action *ex delicto* in New Jersey against the Roche estate and the Dairy Company for the benefit of his surviving next of kin. She then applied to the same New Jersey tribunal for ancillary administration in New Jersey of the estate of the deceased

Roche, and in this wise, so it was conceived, to provide the means of service of process in the *ex delicto* action upon the estate of Roche, whose domiciliary administratrix is his widow under letters granted in New York.

■ This on the hypothesis that Keefe's widow, as general administratrix and administratrix *ad prosequendum,* was a "creditor" of the Roche estate within the intendment of *N. J. S.* 3*A* :6–10. But the provision is for ancillary administration in New Jersey of "real property, choses in action or other personal property" of the deceased "within this state," or the "evidence of choses in action in the hands of a resident of this state," at the instance of a resident or nonresident creditor, if the executor or administrator of the nonresident decedent has not applied for administration within 60 days after the decedent's death, obviously a measure designed to protect and subject to administration tangible and intangible property of the deceased then within New Jersey. And there was no "chose in action" or "personal property" of the deceased Roche within New Jersey, nor "the evidence of choses in action in the hands of a resident" of New Jersey within the intendment of the statute, considering its manifest reason and spirit.

Certainly, this is so as to the asserted claim of Roche's administratrix against the Dairy Company for property damage, for if the claim made here by the deceased Keefe's next of kin against the Roche estate be well founded, then it follows as the night the day that the Roche estate has no cause of action in New Jersey for negligence against the Dairy Company.

■ And the public liability insurance issued in New York to the deceased Roche by the foreign indemnity company also authorized to issue such policies in New Jersey is plainly not a chose in action for the protection of which ancillary administration in New Jersey is needed, in the interest of either a resident or a nonresident creditor. It is to be borne in mind that by force of an express provision, ancillary administration is permissible only when the executor

or administrator of the nonresident decedent fails, for 60 days after the death of his decedent, to apply in New Jersey for "letters testamentary or of administration." We have here a protective mechanism. The liability insurance policy, in its very nature, provided no reason for ancillary administration in New Jersey. There was no judgment to be satisfied under its terms; indeed, action had not been commenced. The policy does not have a situs in New Jersey. It was issued by a foreign corporation in New York to a resident of New York; and, while the indemnity company was and is authorized to transact its business in New Jersey, the policy was not delivered in the exercise of that power, and New Jersey has no interest in its enforcement which confers jurisdiction through ancillary administration to determine the underlying issue of liability in tort as between the nonresident insured and the nonresident injured third persons. This is axiomatic.

Mr. Justice Reed, in the *Standard Oil* escheat case, *infra,* cited by appellant, said that whether property such as choses in action, stock certificates and dividends held by the subject corporation "has its situs with the obligor or the obligee or for some purposes with both has given rise to diverse views" in the Federal Supreme Court, but there is no reason to doubt that "where the debtor and creditor are within the jurisdiction of a court, that court has constitutional power to deal with the debt"; situs of an intangible is fictional, but "control over parties whose judicially coerced action can make effective rights created by the chose in action enables the court with such control to dispose of the rights of the parties to the intangible," and since "such power exists through the state's jurisdiction of the parties whose dealings have created the chose in action," there is no need to "rely on the concept that the asset represented by the certificate or dividend is where the obligor is found"; the "rights of the owners of the stock and dividends come within the reach of the court by the notice, *i. e.* service by publication; the rights" of the New Jersey created corporation "by personal

service," and that power "enables the escheating state to compel the issue of the certificates or payment of the dividends," and this "gives New Jersey jurisdiction to act." *Standard Oil Co. v. State of New Jersey*, 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951).

■ It is a jurisdictional *sine qua non* of the statutory ancillary administrative function that there be a chose in action or other property of the deceased nonresident "within" New Jersey, or "the evidence" of a chose in action "in the hands of a resident" of New Jersey.

■ Here, in all seeming the situs of the insurance policy is the domicil of the nonresident decedent at the time of his death. Personal property ordinarily has its situs at the domicil of the owner. Certainly, the situs of this intangible is not in New Jersey; and the insurer is plainly not a "resident" of New Jersey in the statutory sense.

■ A corporation is "domiciled and resident in the state of its creation"; it lives and dwells in the jurisdiction whence it derives its existence, although it engages in business elsewhere under local authority; it can have its "legal home" only at the place where it is located by or under the authority of its charter, but it may by its agents transact business anywhere, unless prohibited by its charter or excluded by local law. A corporation, by doing business away from its "legal residence," simply enlarges the field of its operations. It resides at home, but does business abroad. A natural person resident in New Jersey does not become a "nonresident" by merely engaging in business in another jurisdiction; *a fortiori,* a domestic corporation whose domicil and residence in the state of its creation are inseparable incidents of the charter which gives it being, does not become a "nonresident" by transacting business in another sovereignty, although it may have a residence there for the purposes ordained by the foreign jurisdiction. *State v. Garford Trucking, Inc.,* 4 *N. J.* 346 (1950).

■ Personal property within the State belonging to the estate of the decedent is the *factum* of jurisdiction to provide

ancillary administration. By ancient fiction accorded recognition by comity, personal property was deemed adherent to the person of the owner, so much so as to have no situs other than his domicil, a principle embodied in the maxim of the Roman law, *mobilia sequuntur personam*. *Lamar v. Micou,* 112 *U. S.* 452, 5 *S. Ct.* 221, 28 *L. Ed.* 751 (1884). And though in our complex society this doctrine has come to have a limited application, ancillary administration is a mode of procedure designed only to protect property of the deceased nonresident situate within the jurisdiction, at the outset for the benefit of resident creditors through local administration, but later, by a revision of the enabling act adverted to, adopted January 1, 1952, *N. J. S.* 3*A*:6–10, for the protection also of nonresident creditors. Such is an attribute of sovereignty in relation to property within its control.

An arbitrary construction is not true exegesis. The meaning of a statute is not ruled by the strict letter, but rather by the sense and meaning fairly deducible from the context. The reason of the provision prevails over the literal sense of the words; the obvious policy is an implied limitation on the sense of general terms, and a touchstone for the expansion of narrower terms. The spirit gives character and meaning to the particular symbols of expression. The evident policy is the true key to open the understanding of the act. *Fischer v. Fischer,* 13 *N. J.* 162 (1953).

The ruling principle is exemplified by *In re Rogers' Estate,* 164 *Kan.* 492, 190 *P. 2d* 857 (*Sup. Ct.* 1948), and *Wheat v. Fidelity & Casualty Co. of New York, Colo.,* 261 *P. 2d* 493 (*Sup. Ct.* 1953). In the former case it was held in somewhat similar circumstances that the Kansas legislative authority had not included nonresident estates in the statutory provision for substituted service of process on nonresident users of the state's highways for motor vehicular travel, and it was not a judicial function to extend the provision beyond the declared policy. This is precisely the case here; and the reasoning would seem to be indisputable. See, also, *In*

*re Reardon's Estate,* 203 *Okl.* 54, 219 *P. 2d* 998 *(Sup. Ct.* 1950).

Ancillary administration is sought, ostensibly to serve the protective probate function, but in reality to secure service of process in New Jersey in an action *ex delicto* in which all parties, plaintiffs and the defendant Roche estate, are domiciliaries and residents of New York, in utter disregard of the statutory policy excluding nonresident estates from liability to substituted service in such circumstances. Indeed, it seems to be conceded that the real design of ancillary administration is the service of *in personam* process in New Jersey notwithstanding the limitations of *R. S.* 39:7–2, as amended, for the benefit of nonresident suitors. Be that as it may, the asserted presence of property of the Roche estate in New Jersey is purely fictional and in no sense related to the substance of the statutory prerequisite to the exercise of the ancillary administrative jurisdiction. Compare *Redzina v. Provident Institution for Savings in Jersey City,* 96 *N. J. Eq.* 346 *(E. & A.* 1924).

Affirmed.

BURLING, J. (dissenting). This civil action is a probate cause involving ancillary administration in this State of the alleged local estate of a foreign decedent. The complaint was filed with the Surrogate of Passaic County, certified to the County Court of Passaic County, and the proceedings subsequently were transferred to the Superior Court, Chancery Division (Passaic County) wherein an amended complaint was filed. The complaint and amended complaint were filed by Marion D. Keefe, as ancillary administratrix of the estate of Lawrence V. Keefe, deceased (a foreign decedent, having resided at Pelham, New York), and as administratrix *ad prosequendum* in New Jersey of the Estate of Lawrence V. Keefe, deceased, for the purpose of prosecuting an action against Port Murray Dairy Co., Inc., a corporation, and the estate of Frank T. Roche, deceased. The plaintiff by these proceedings sought the issuance, to

some fit person to be designated by the court, of ancillary letters of administration of the estate of Frank T. Roche, deceased (a foreign decedent, having been domiciled at the time of his death in the state of New York). The Superior Court, Chancery Division, on April 2, 1954, entered judgment of dismissal of the complaint and amended complaint and the plaintiff appealed. The appeal was addressed to the Superior Court, Appellate Division, but prior to hearing there was certified on our own motion.

On July 27, 1951 Frank T. Roche, residing in Briarcliffe Manor, Westchester, New York, was an owner of a certain automobile. Lawrence V. Keefe and his wife, Marion D. Keefe, at that time resided in Pelham, New York. On the same date Frank T. Roche and Lawrence V. Keefe were riding in Roche's automobile in Clifton, New Jersey, and that automobile collided with a truck owned by Port Murray Dairy Co., Inc., a New Jersey corporation, which truck was operated by one Alfred Taylor. Frank T. Roche and Lawrence V. Keefe died from injuries allegedly sustained as a result of that collision.

On October 22, 1951 Greta M. Roche was appointed administratrix of the estate of Frank T. Roche, deceased, by the Surrogate of Westchester County, New York.

On June 26, 1952 Marion D. Keefe was appointed administratrix *ad prosequendum* of the estate of Lawrence V. Keefe, deceased, by the Surrogate of Passaic County, New Jersey, to prosecute an alleged cause of action against the Roche Estate, Port Murray Dairy Co., Inc., and Alfred Taylor. She was also appointed by the Surrogate of Passaic County to be general administratrix (ancillary) for the purpose of receiving the benefits resulting from the right of action created by the New Jersey Death Act, *N. J. S.* 2A:31–6.

On April 10, 1953 the plaintiff, Marion D. Keefe, administratrix of the estate of Lawrence V. Keefe, deceased, as aforesaid, instituted the present action, praying the appointment of an ancillary administrator of the estate of Frank T. Roche, deceased.

This appeal involves the construction and application of *N. J. S.* 3*A*:6–10, which reads as follows:

"If an executor or administrator of a nonresident decedent fails to apply in this state for letters testamentary or of administration within 60 days next after the death of the decedent and *there is,* real property, *choses in action or other personal property of the decedent within this state, or the evidence of choses in action in the hands of a resident of this state,* the surrogate's court of a county wherein any such real property, choses in action or evidences thereof or other personal property, is situate, or the superior court, may, in an action by any person resident or nonresident, alleging himself to have a debt or legal claim against the decedent which by the law of this state survives against his representatives, issue letters of administration, with the will annexed or otherwise as the case may require, to some fit person to be designated by the court.

Prior to an appointment pursuant to this section such notice shall be given the foreign executor or administrator as the court shall prescribe." (Emphasis supplied)

It is conceded by the defendants on this appeal that the plaintiff, who individually is a nonresident, has adequate status to qualify her as an applicant for ancillary administration under *N. J. S.* 3*A*:6–10, *supra,* because of her claim under the Death Act (*N. J. S.* 2*A*:31–1 *et seq.*). A question involved relating to the status of a nonresident creditor as a proper party plaintiff under *N. J. S.* 3*A*:6–10, *supra,* is therefore not necessary to the disposition of this appeal. However, in passing it is observed that the statute gives express authority to a nonresident of New Jersey in this respect to apply for appointment of an administrator. *Cf. Atkinson, The Uniform Ancillary Administration and Probate Acts,* 67 *Harvard L. Rev.* 619, 624–627 (1954).

The questions involved in the disposition of the appeal are limited to whether there is property in New Jersey under *N. J. S.* 3*A*:6–10, *supra,* which may be the subject of an ancillary administration here, where the decedent (in this case, Roche) was the owner of a contract of liability insurance with a foreign corporation which is authorized to transact business in New Jersey and maintains an office here, or where the same decedent has a cause of action (which survives to his estate) for property damage arising out of

a collision in New Jersey. The facts pertinent to raise these questions were stipulated. A further question involved is whether the court may in its discretion refuse to grant letters of ancillary administration if assets exist in New Jersey.

## I

The question is involved in this appeal whether under *N. J. S.* 3A:6–10, *supra*, a liability insurance policy constitutes property of a nonresident who met his death in an automobile collision in this State, in which the automobile covered by that policy was involved.

The initial construction of this statutory provision (*N. J. S.* 3A:6–10, *supra*) requires resort to the interpretation favored by the Legislature. In *R. S.* 1:1–2 (and in *R. S.* 1:1–2 as amended by *L.* 1948, *c.* 4, *sec.* 1; *L.* 1953, *c.* 4, *sec.* 1) the Legislature provided as follows:

"Unless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction, the following words and phrases, when used in any statute and in the Revised Statutes, shall have the meaning herein given to them.

\*    \*    \*    \*    \*    \*    \*    \*

Personal property. 'Personal Property' includes goods and chattels, rights and credits, moneys and effects, evidences of debt, choses in action and all written instruments by which any right to, interest in, or lien or encumbrances upon, property or any debt or financial obligation is created, acknowledged, evidenced, transferred, discharged or defeated, in whole or in part, and everything except real property as herein defined which may be the subject of ownership."

This statutory mandate is broad and when applied to the provisions of *N. J. S.* 3A:6–10, *supra*, seems clearly to require a construction that the decedent's, Roche's, interest in the liability insurance policy issued to him constituted "property" which passed to his estate. The insurance policy is at the very least a "written instrument by which any \* \* \* debt or financial obligation" is either created or evidenced, and it is clearly included in the category "everything except real property \* \* \* which may be the subject of ownership." The only point of difficulty is whether

the *situs* of the policy is conceived to be in New Jersey for the purposes of the contemplated administration.

This presents a question novel to the jurisprudence of this State. The question has been directly disposed of in other jurisdictions, however, the general conclusion expressed elsewhere has been that the potential liability of the insurer is an asset of the estate, although collection of the proceeds (*i. e.*, enforcement of the rights of the insured) may be dependent upon the establishment of a claim by a third person against the estate. *Robinson v. Dana's Estate*, 87 *N. H.* 114, 174 *A.* 772, 94 *A. L. R.* 1437 (*Sup. Ct.* 1934); *Furst v. Brady*, 375 *Ill.* 425, 31 *N. E.* 2*d* 606, 133 *A. L. R.* 558 (*Sup. Ct.* 1940); *In re Vilas' Estate*, 166 *Or.* 115, 110 *P.* 2*d* 940 (*Sup. Ct.* 1941); *Davis v. Cayton*, 214 *S. W.* 2*d* 801 (*Tex. Ct. Civ. App.* 1948); *Shirley's Estate v. Shirley*, 334 *Ill. App.* 590, 80 *N. E.* 2*d* 99 (*App. Ct.* 1948); *Liberty v. Kinney*, 242 *Iowa* 656, 47 *N. W.* 2*d* 835 (*Sup. Ct.* 1951); *Berry v. Smith*, 85 *Ga. App.* 710, 70 *S. E.* 2*d* 62 (*Ct. App.* 1952). *Cf. Goodrich on Conflict of Laws* (3*d ed.* 1949), *sec.* 178, *pp.* 535–536, *sec.* 184, *p.* 548; *Stumberg, Conflict of Laws* (2*d ed.* 1951), *pp.* 437–439. We are of the opinion that the law of this State is that the insurer's liability under these circumstances is property of the decedent's estate under *N. J. S.* 3*A* :6–10, *supra*, for the purposes of ancillary administration here.

The defendant's argument was that the *situs* of the property in the insurance policy is in the domiciliary state. This was the rationale of *Wheat v. Fidelity & Casualty Co. of New York*, 261 *P.* 2*d* 493 (*Colo. Sup. Ct.* 1953) and *In re Rogers' Estate*, 164 *Kan.* 492, 190 *P.* 2*d* 857, 860–861 (*Kan. Sup. Ct.* 1948).

In the *Wheat* case, *supra*, the Colorado Supreme Court held that the *situs* of such an asset as the liability policy was at the domicile of the decedent, and quoting from the *Rogers* case, *supra*, made the following observation (261 *P.* 2*d*, at *page* 496):

" '* * * A conclusion that this indemnity policy constitutes "estate" left by the nonresident decedent to be administered in Mar-

shall county would mean this policy constitutes "estate" which may be administered in any county in Kansas and in any county of every other state of the union, with a similar statute, in which the insurer is authorized to transact business. We do not think the statute was intended to produce such a result.' * * *"

While the observation of the Colorado Supreme Court, quoted *ante,* is a valid one, our statute is considerably more extensive than the Colorado statute construed therein, which referred merely to "estate." The premise thus reduces itself to one of convenience. It seems that the action would not be brought except in a state where one of the parties involved in the occurrence (*i. e.,* the motor vehicle collision) resides (or died domiciled), or in the state where the occurrence took place. A similar decision to the *Wheat* case, *supra, In re Rogers' Estate, supra,* turned on the point that even though the liability policy was personal property and part of the decedent's estate, Kansas followed the rule that on death the *situs* of personal property of the decedent becomes fixed and local at his domicile.

In New Jersey the rule is otherwise. Chancellor Green in *Banta v. Moore,* 15 *N. J. Eq.* 97, 100–101 (*Ch.* 1862), held that although the right of succession to the personal estate is to be regulated by the law of the domicile:

"The principle is well settled, that the administration of the estate must be in the jurisdiction in which possession was taken and held of it under lawful authority; and where there are two administrators in different countries, each portion of it must be administered in the country where possession of it is taken under lawful authority. I *Williams on Ex'rs.* 356; 2 *Ibid.* 1414."

Chancellor Green found that this principle of dual administration was established in the English law by, *inter alia, Preston v. Lord Melville,* 8 *Clark & Fin.* 1, 8 *Eng. Rep.* 1 (*H. L.* 1841), and that "The subject has been elaborately discussed, and the principle fully established by the highest judicial authority in this country. *Harvey v. Richards,* 1 *Mason* 381 [*Fed. Cas. No.* 6, 184, 11 *Fed. Cas. p.* 746 (*Circ. Ct. Mass.* 1818)]; *Vaughan v. Northup,* 15 *Pet.* 1 [40

*U. S.* 1, 10 *L. Ed.* 639 (1841)]; *Story's Conf. of Laws,* § 513, 513*a*; 2 *Kent's Com.* 431–435." He further held:

"\* \* \* all that can be required, if the fund in the hands of the foreign administrator is needed for the purposes of due administration in the place of the domicile, is its transmission or distribution after all the claims against the foreign administration have been duly ascertained and settled. *Story* on *Conflict of Laws,* § 518; 2 *Williams on Ex'rs* 1415."

*Cf.* 3 *Beale, Conflict of Laws* (1935), *sec.* 465.3 *et seq., pp.* 1447 *et seq.*

A New York intestate's royalties on copper ore, which he had pledged to secure his debt to a New Jersey corporation doing business in New York, have been held to "constitute assets in New Jersey" for the purposes of ancillary administration under the rule "that the chose of action is in the jurisdiction where you would have to go to enforce it, \* \* \*." *Wall v. American Smelting & Refining Co.,* 91 *N. J. Eq.* 131, 134 (*E. & A.* 1919). *Cf. Amparo Mining Co. v. Fidelity Trust Co.,* 75 *N. J. Eq.* 555 (*E. & A.* 1909). *Caruso v. Caruso,* 106 *N. J. Eq.* 130, 134–135 (*E. & A.* 1929), is not to the contrary, turning in this respect on the absence of creditors in New Jersey and the fact that the royalties in question were not payable to the decedent's estate. *Cf.* 6 *New Jersey Practice* (*Clapp, Wills and Administration*) (1950), *sec.* 393, *pp.* 268–269.

By Analogy, although it is not *necessary* that the insurance carrier be sued in New Jersey, it is undeniably true that action here would be *proper* in the event the insurance carrier failed to perform its obligation to the estate of Frank T. Roche, deceased, in connection with defense of the tort action or payment of any judgment recovered against the Roche estate by the Keefe estate or others.

## II

A further question involved is whether the Roche estate's alleged claim for property damage, against Port Murray

Dairy Co., Inc., and Alfred Taylor, is property in New Jersey under *N. J. S.* 3*A* :6–10, *supra.*

It was asserted by the plaintiff that the decedent, Roche, had a cause of action for property damage against Port Murray Dairy Co., a New Jersey corporation (and against its driver, Alfred Taylor) which under *N. J. S.* 3*A* :6–10, *supra,* is an asset of his estate. The defendants contended that a tort claim is not a chose in action under *N. J. S.* 3*A* :6–10, *supra.* We are of the opinion that such a claim is within the scope of the statute. *Cf.* 6 *New Jersey Practice, supra, sec.* 393, *p.* 269.

A chose in action is a personal right not reduced to possession but recoverable by a suit at law. *Ballentine's Law Dictionary* (1930), *p.* 214. A chose *ex delicto* is a chose in action although it is not assignable in absence of statute. *United States Casually Co. v. Hyrne,* 117 *N. J. L.* 547, 552 (*E. & A.* 1937) ; *Weller & Lichtenstein v. Jersey City, etc., St. Ry. Co.,* 68 *N. J. Eq.* 659, 662 (*E. & A.* 1905) ; *Gaskill v. Barbour,* 62 *N. J. L.* 530, 531 (*Sup. Ct.* 1898). *Cf. East Orange Lumber Co. v. Feiganspan,* 120 *N. J. L.* 410, 411–412 (*Sup. Ct.* 1938), affirmed 124 *N. J. L.* 127 (*E. & A.* 1939). It is observed that *N. J. S.* 2*A* :25–1 relating to assignments provides that "all choses in action *arising on contract* shall be assignable" (emphasis supplied). The limitation "arising on contract" is not contained in *N. J. S.* 3*A* :6–10, *supra,* relating to ancillary administration here of foreign decedent's local estates, nor is there anything in *N. J. S.* 3*A* :6–10, *supra,* repugnant to the construction we have placed upon it. *Vide R. S.* 1 :1–2, *supra.*

The defendants contended that the purpose of the plaintiff was an attempt to avoid the decision expressed in *Young v. Potter Title & Trust Co.,* 114 *N. J. L.* 561 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 518 (*E. & A.* 1935), namely that nonresident service of process under the Motor Vehicle Act (*R. S.* 39 :7–2, 3) did not render a foreign administrator liable to suit in this state in his representative capacity. We find no merit in this contention. The ancillary administration provision of the statutes of this State, namely *L.*

1898, c. 234, sec. 29, subsequently incorporated in *R. S.* 3:7–11, the predecessor of *N. J. S.* 3A:6–10, *supra,* contained no words extending its provisions to nonresident creditors at the time of the decision in the *Young* case, *supra.* These words were added in the revision approved December 5, 1951, effective January 1, 1952, now *N. J. S.* 3A:6–10, *supra.*

The defendants have asserted that the refusal to appoint an ancillary administrator for the Roche estate at the application of the plaintiff is supportable upon the premise that if the Roche estate prevails in an action against the Port Murray Dairy Co., Inc. (and Alfred Taylor) then Roche was not negligent. The defendants. pursuing this supposition, assert that in such an event the Keefe action against the Roche estate would fall. There is in the record before us an indication that either one claim or the other might be supported if properly pursued. This being so, the appointment should be made in order that the opposing claims may be adequately aired in appropriate judicial proceedings wherein the parties have the right to trial by jury. The statute *N. J. S.* 3A:6–10, *supra,* does not require reduction to judgment of the conflicting claims in the proceedings for appointment of the ancillary administrator.

### III

The final question involved is whether the trial court had the discretionary authority to deny the ancillary administration. The judgment of the trial court was not premised on this ground but upon alleged nonexistence of property in New Jersey within *N. J. S.* 3A:6–10, *supra.* The record does not indicate that this point was addressed to the trial court.

The defendants contended that *N. J. S.* 3A:6–10, *supra,* is permissive and that the denial of relief thereunder by the Superior Court, Chancery Division, did not constitute an abuse of discretion. The words of the statute have been held to be permissive. *In re Sauer,* 133 *N. J. Eq.* 548, 549 (*Prerog.* 1943). But denial of administration under the

circumstances of this case coupled with the disposition of the questions hereinbefore discussed and decided would constitute an abuse of discretion.

The defendants' contention that the Roche estate is amenable to suit in New York is no more than an assertion of the doctrine of *forum non conveniens*. While the record before us does not disclose all the evidence relating to the collision, it appears that essential witnesses are residents of New Jersey and the place of the occurrence being in New Jersey, a jury of view here might be obtained here and might be unattainable in New York. The principles concerning the application of this doctrine of *forum non conveniens* expressed in *Gore v. United States Steel Corp.*, 15 *N. J.* 301, 305 *et seq.* (1954), require disposition of the present controversy in New Jersey courts under the circumstances disclosed in the present record. Further, if there is an asset of the estate which may be subjected to administration here it is apparent that a denial of the relief sought would work to the prejudice of residents of New Jersey, namely Port Murray Dairy Co., Inc., and (presumably) its truck driver, Alfred Taylor. The plaintiff has initiated action against these two parties and the courts of this State should be open to determination of the entire controversy arising out of the occurrence from which this litigation emanates, including such rights, if any, as may exist under the Joint Tortfeasors Contribution Law.

It was alleged by the defendants on oral argument that this application for ancillary administration is merely a device to overcome the effect of the alleged running of a statute of limitation of New York relative to the principal cause of action. A statute of limitation is one of repose and operates on the remedy merely and does not extinguish the right. *Miller v. Bd. of Chosen Freeholders of Hudson County*, 10 *N. J.* 398, 403 (1952); *State by Parsons v. Standard Oil Co.*, 5 *N. J.* 281, 295 (1950); *Chase Securities Corporation v. Donaldson*, 325 *U. S.* 304, 305, 65 *S. Ct.* 1137, 89 *L. Ed.* 1628 (1945). In this respect statutes of limitation are usually considered to have procedural attributes and the law

of the forum governs. It is said: "That the statute of limitations of the forum is the applicable law of limitations is so well settled, in Anglo-American law at least, as to be beyond dispute." 3 *Beale, Conflict of Laws* (1935), *sec.* 603.1 *et seq., pp.* 1620 *et seq.; Goodrich, Conflict of Laws* (*3d ed.* 1949), *sec.* 94, *pp.* 267–269; *Stumberg, Conflict of Laws* (*2d ed.* 1951), *pp.* 147–152; 34 *Am. Jur., Limitation of Actions, sec.* 51, *p.* 51; *sec.* 400, *pp.* 314–315; 11 *Am. Jur., Conflict of Laws, sec.* 191 *et seq., pp.* 505 *et seq.* Compare *Hancock, Torts in the Conflict of Laws* (1942), *sec.* 30, *pp.* 133 *et seq.* The disparity of the periods of limitation in the statutes of the two states is a matter of public policy to be determined by their respective legislatures. The defendants' argument in this respect presents no sound objection to action in New Jersey, particularly in view of the doctrine of the convenience of the forum, hereinbefore reviewed.

The defendants' arguments, except as they relate to the existence of assets in New Jersey (hereinbefore discussed), assert without verification that the plaintiff could bring the principal (tort) action against the Roche estate in New York but has not done so because of a statutory bar to her claim. The alleged statutory bar is subsection 6 of section 29 of the New York Workmen's Compensation Law (*McKinnon, Consol. Laws of New York, c.* 67), which provides that the benefits thereunder "shall be the exclusive remedy" when an employee is injured or killed by the negligence or wrong of another in the same employ. See *Stacy v. Greenberg,* 14 *N. J.* 262 (1954). If this is so, it is a matter of defense which the ancillary administrator in New Jersey would have an opportunity to assert in the principal action in New Jersey against the Roche estate by the Keefe estate.

For the reasons above expressed I vote to reverse the judgment of the Superior Court, Chancery Division, and to remand the cause for further proceedings consistent with the views expressed in this opinion.

Mr. Justice WACHENFELD and Mr. Justice JACOBS authorize me to state that they join in the views expressed in this opinion.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and BRENNAN—4.

*For reversal*—Justices WACHENFELD, BURLING and JACOBS —3.